UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SCOTT POLCYN, an individual; and SHERRI POLCYN, an individual,<br><br>　　　　　　　　　　　Plaintiffs,<br><br>v.<br><br>LIBERTY MUTUAL INSURANCE COMPANY, a Massachusetts corporation; and LIBERTY MUTUAL FIRE INSURANCE COMPANY, a Wisconsin corporation,<br><br>　　　　　　　　　　　Defendants. | Civil No.　12cv730-CAB (BGS)<br><br>**ORDER DENYING MOTION TO DISMISS**<br>**[Doc. No. 5]** |

On June 14, 2012, Defendants Liberty Mutual Insurance Company ("LMIC") and Liberty Mutual Fire Insurance Company ("LMFIC") (collectively "Liberty Mutual") filed a motion to dismiss the complaint. [Doc. No. 5.] On July 27, 2012, Plaintiffs filed an opposition to the motion. [Doc. No. 6.] On August 2, 2012, Defendants filed a reply to the opposition. [Doc. No. 7.] On August 8, 2012, the motion was taken under submission. [Doc. No. 8.] After reviewing the submissions of the parties, the Court **HEREBY DENIES** the motion to dismiss.

**I.　Background**

On June 12, 2006, Thomas and Pia Eckwortzel (the "Eckwortzels") sued Scott and Sherri Polcyn (the "Polcyns") in state court for trespass with regard to a property dispute (the "Lawsuit"). Complaint ("Compl."), Doc. No. 1 at 2, ¶¶ 13 and 14. The Polycns had

purchased insurance through Liberty Mutual Group including both homeowners coverage (throught LMFIC) and umbrella liability coverage (through LMIC). Compl. ¶ 17. The Polycns tendered the defense of the Lawsuit to Liberty Mutual within one or two days of being served. Compl. ¶ 18. Liberty Mutual did not immediately agree to defend the Polcyns, and the Polcyns retained Attorney Craig Zafis to protect their interests in the Lawsuit. Compl. ¶ 19.

On August 10, 2006, Liberty Mutual issued a denial of coverage and rejected the tender of defense for both LMIC and LMFIC. Compl. ¶ 33. The Eckwortzels then filed a First Amended Complaint ("FAC") [Doc. No. 1-1 at 12], and the Polcyns again tendered the defense to Liberty Mutual. Compl. ¶¶ 38, 39. On November 20, 2006, Liberty Mutual denied coverage and refused the tender of defense of the FAC.

On April 13, 2007, Mr. Zafis again tendered the defense of the Lawsuit to Liberty Mutual with copies of discovery responses. Compl. ¶ 45. On May 2, 2007, Liberty Mutual again denied coverage and any duty to defend.

The Exkwortzel's then filed a Second Amended Complaint ("SAC"), and (on January 2, 2008) Mr. Zafis again requested Liberty Mutual provide coverage and defend the Polcyns. Compl. ¶¶ 52, 53. On May 11, 2009, Mr. Zafis again requested that Liberty Mutual provide coverage and defend the Polcyns. Compl. ¶ 55. On May 14, 2009, Liberty Mutual again denied coverage and any duty to defend. Compl. ¶ 56.

On May 29, 2009, Attorney William E. O'Nell (on behalf of the Polcyns) asserted that Liberty Mutual's denial of coverage and refusal to defend the Polcns had been in bad faith and requested that Liberty Mutual accept the Poycn's tender of defense of the Lawsuit. Compl. ¶ 58. On July 6, 2009, Mr. O'Nell again requested that Liberty Mutual accept the tender of the Polycns' defense. Compl. ¶ 59. On August 26, 2009, LMFIC accepted the tender and agreed to defend under the Homeowners Policy. Compl. ¶ 60.

By the end of 2009, Liberty Mutual had agreed to pay all of the Polcyns' defense costs from the original tender through the conclusion of the case. Compl. ¶ 66. Liberty

Mutual also agreed to pay "*Brandt* fees"[1] incurred to both Mr. Zafis and Mr. O'Nell. Compl. ¶¶ 67, 68. Finally, Liberty Mutual agreed to pay interest on the amounts paid by the Polcyns for their attorneys' fees and defense costs (Compl. ¶ 69), but would not agree to pay the Polcyns for emotional distress damages (Compl. ¶ 70).

## II. Discussion

### A. Legal Standard.

Federal Rule of Civil Procedure 12(b)(6) permits a party to raise by motion the defense that the complaint "fail[s] to state a claim upon which relief can be granted," generally referred to as a motion to dismiss. "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is facially plausible when the collective facts pled "allow[] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556). That is not to say that the claim must be probable, but there must be "more than a sheer possibility that a defendant has acted unlawfully." *Id.* Facts "'merely consistent with' a defendant's liability" fall short of a plausible entitlement to relief. *Id.* (quoting *Twombly*, 550 U.S. at 557). Further, the Court need not accept as true "legal conclusions" contained in the complaint. *Id.*

### B. Bad Faith Claim.

Defendants argue that Plaintiffs have failed to state a claim for bad faith because they have failed to allege any facts that Liberty unreasonably delayed accepting the defense of the Lawsuit. [Doc. No. 5-1 at 12-13.] Plaintiffs argue that they do state sufficient allegations to set forth a claim for bad faith, and that Defendants have admitted

---

[1] An insured suing in tort may recover "those attorney's fees that were incurred to obtain the policy benefits and that would not have been incurred but for the insurer's tortious conduct." *Brandt v. Superior Court*, 37 Cal.3d 813, 819 (1985).

to bad faith by paying the Plaintiffs for their *Brandt* fees. [Doc. No. 6 at 14-20.][2]

"In addition to the right to sue an insurer in contract, if the insurer acts unreasonably and without proper cause in failing to investigate a claim, refusing to provide a defense, or either delaying or failing to pay benefits due under the policy, the insured can sue in tort for breach of the covenant of good faith and fair dealing." *Emerald Bay Community Assn. v. Golden Eagle Ins. Co.*, 130 Cal.App.4th 1078, 1093(2005). Under California law, to establish breach of the implied covenant, "(1) benefits due under the policy must have been withheld; and (2) the reason for withholding benefits must have been unreasonable or without proper cause." *Love v. Fire Ins. Exchange*, 221 Cal.App.3d 1136, 1151 (1990).

Here, Plaintiffs allege they tendered the defense of the Lawsuit four times and, each time, Defendants rejected the tender of defense without undertaking a reasonable investigation. Compl. ¶¶ 35, 42, 49 and 56. Moreover, it was not until Plaintiffs hired insurance coverage counsel that Defendants, without any new information, finally accepted the tender of defense of the Lawsuit. Compl. ¶¶ 58-62. These allegations are sufficient to state a claim for bad faith. *Love v. Fire Ins. Exchange*, 221 Cal.App.3d at 1151.

C. Economic Damages.

Defendants also argue that, because they have now paid Plaintiffs for all of the economic damages Plaintiffs incurred defending themselves in the Lawsuit (without obtaining a release of the bad faith claim), Plaintiffs no longer have a bad faith claim. [Doc. No. 5-1 at 13-15.] Plaintiffs argue that Defendants' prepayment of the economic damages mitigated the Plaintiffs' damages, but did not eliminate their bad faith claim. [Doc. No. 6 at 20-21.]

The Court agrees with the Plaintiffs. The requirement of economic loss for recovery of emotional distress damages stemming from an insurer's unreasonable refusal

---

[2] Plaintiffs' argument that, by paying Plaintiffs' *Brandt* fees, Defendants have admitted to bad faith, is an evidentiary argument more suitably addressed at summary judgment or trial.

to pay benefits may be satisfied where the insured has paid legal fees and court costs to enforce a claim under the policy. *Major v. Western Home Ins. Co.*, 169 Cal.App.4th 1197, 1214 (2009). By prepaying Plaintiff's economic damages, the Defendants have likely limited the amount of time that Plaintiffs can claim they incurred emotional distress damages, but that prepayment does not eliminate the Plaintiffs' claim for bad faith. *See Shade Foods Inc. v. Innovative Products Sales & Marketing, Inc.*, 78 Cal.App.4th 847, 883 (2000); *Delos v. Farmers Group, Inc.*, 93 Cal.App.3d 642, 659 (1979).[3]

In *Shade Foods*, the insurer rejected a tender of defense but reconsidered its denial shortly before trial and paid all of its insured's legal expenses. *Shade Foods, Inc.*, 78 Cal.App.4th at 879. During the time the insurer had rejected the tender of the defense, the insured arranged and paid for its own defense. *Id*. at 883. The California Court of Appeals upheld the jury's finding that the insurer breached the covenant of good faith and fair dealing. The court noted that the insurer "did not fully remedy the harm caused by its refusal to defend by later paying [the insured's] attorney fees, though this belated decision unquestionably mitigated its damages." *Id*. at 883. *See also Kaufman & Broad Monterey Bay ("K.B. Homes") v. Travelers Property Casualty Company of America*, 2012 WL 2945932, at * 13 (N.D. Cal.)(belated payment of defense costs does not eliminate bad faith claim; however K.B. Homes never paid directly for its own defense costs and therefore no economic damages). Here, the Polcyns allege that they personally incurred over $140,000 in attorneys fees and costs over the course of four years in defending themselves in the Lawsuit and pursuing insurance coverage. Compl. ¶ 77.

---

[3] The purpose of the requirement of economic damages is to "reduce the risk of fictitious claims and those based simply on bad manners, and to avoid litigation over trivialities." *Waters v. United Services Auto. Assn.*, 41 Cal.App.4th 1063, 1080 (1996). Here, the Plaintiffs allege that they incurred over $140,000 in economic damages as a result of the denial of a defense. Compl. ¶ 77. The fact that the economic damages have now been prepaid does not extinguish any emotional distress damages that may have occurred during the period of time that the insurer refused to defend. If Defendants' position is accepted as true, then whenever an insurer belatedly agrees to defend an insured, the insured is put in the untenable position of having to refuse such defense in order to preserve his/her rights to all bad faith damages (including emotional distress and punitive damages). This is simply not the purpose or policy behind the requirement of economic damages to sustain a bad faith claim.

When the Defendants belatedly compensated them for those fees and other costs, this did not eliminate the Plaintiffs' bad faith claim. Rather, it mitigated the Plaintiffs' damages. Therefore, the Plaintiffs state a claim for bad faith notwithstanding the belated compensation of defense and other economic costs.

D. Punitive Damages.

Finally, Defendants argue that Plaintiffs cannot recover punitive damages because they cannot show economic loss. [Doc. No. 5-1 at 15.] For the reasons set forth above, the Plaintiffs do allege economic loss (for which they have now been compensated) and, therefore may seek punitive damages.

**III. Conclusion**

For the foregoing reasons, Defendants' motion to dismiss is **DENIED**. Defendants shall file an answer to the complaint by **June 21, 2013**.

**IT IS SO ORDERED.**

DATED: May 30, 2013

_____
**CATHY ANN BENCIVENGO**
United States District Judge